UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                               :

ADRIANNE CRONAS, on behalf of herself and  :
all similarly situated persons,                      :
                               :

                         Plaintiff,    :

                               :          06 Civ. 15295 (GEL)
        -v-                      :
                               :       **OPINION AND ORDER**

WILLIS GROUP HOLDINGS LTD., et al.,    :
                               :
                    Defendants.  :
                               :
------------------------------------------------------------x

Robert L. Herbst, Sofia Yakren, Beldock Levine &
Hoffman LLP, New York, NY, Rosalind Fink,
Brill & Meisel, New York, NY, for plaintiff.

Bettina B. Plevan, Proskauer Rose LLP, New York,
NY, for defendants.

GERARD E. LYNCH, District Judge:

       Plaintiff Adrianne Cronas brings this employment discrimination class action against her

former employer Willis Group Holdings, and its affiliated entities (collectively, "Willis").

Plaintiff alleges a pattern and practice of sex discrimination and retaliation in violation of Title

VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e-2 et seq. ("Title VII"), and related state and

city laws.  Defendants move to dismiss plaintiff's Title VII claims, arguing that plaintiff has not

satisfied the administrative requirements for maintaining a Title VII claim, or alternatively, that

plaintiff's discrimination claims are subject to mandatory arbitration.  Defendants' motion will

be denied.

**BACKGROUND**

Only the facts relevant to the current dispute are recited here.

Cronas was hired by Willis in September 1996 as a Vice-President in the New York office.  (Compl. ¶ 28.)  When she was hired, Cronas signed an employment agreement (the "Agreement"), which stated that "any dispute arising under th[e] Agreement shall be resolved by arbitration."  (Herbst Decl. Ex. 4, at ¶ 5.)  In 1999, Cronas was promoted to the position of Senior Vice-President and Manager of the New York Environmental Department.  (Compl. ¶ 33.) The complaint alleges that Cronas received positive feedback and several raises throughout most of her tenure at Willis (id. ¶¶ 38, 43), though she did not receive certain stock options that were offered to other similarly situated male employees (id. ¶ 42).  However, in March 2004, Cronas was demoted, and in June 2004, she was terminated and replaced by a man who was compensated at a higher salary.  (Id. ¶¶ 45-46.)

After she was terminated, Cronas did not file a discrimination charge with the Equal Employment Opportunity Commission ("EEOC").  Instead, Cronas attempted to intervene as a named plaintiff and class representative in Hnot v. Willis Group Holdings Ltd., et al., 01 Civ. 6558 (GEL) ("Hnot"), a pending Title VII class action alleging a pattern and practice of gender discrimination by Willis.  See Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476 (S.D.N.Y. 2005).  The Hnot plaintiffs contend that Willis delegates substantial authority regarding promotion and compensation decisions to regional and local officers, leading to inequitable consequences for women at Wills.  Id. at 479-80.  The Hnot class was certified to include women of "officer-level and equivalents," but covers only persons employed by Willis through December 31, 2001.  Id. at 480.  Thus, the Hnot claims do not include, and the parties did not

2

conduct discovery on, allegations of post-2001 discriminatory conduct.  See Hnot v. Willis

Group Holdings Ltd., No. 01 Civ. 6558, 2006 WL 2381869 (S.D.N.Y. Aug. 17, 2006) (denying

extension of discovery and class period through 2004).[1]

On November 30, 2006, the Court denied Cronas's motion to intervene in Hnot.  2006

WL 3476746.  The Court determined that Cronas's motion was untimely, and found that

permitting intervention at such a late juncture in the case would "prejudice" the defendants by

"further delay[ing] resolution of the pre-2002 claims pending against them."  Id. at *5.  Although

Cronas argued that denying the motion would cause her "significant prejudice" because she

would be "unable to demonstrate continued gender discrimination after 2001, and to prove up her

damage in under-compensation after 2001," the Court rejected that argument, as Cronas

"remain[ed] free to bring a separate action against defendants."  Id.

On December 19, 2006, Cronas filed the instant action, alleging a pattern and practice of

gender discrimination and retaliation at Willis.  Specifically, Cronas alleges that Willis "permits

. . . excessive subjectivity in making" employment decisions, which results in a "disparate impact

on female offices and officer-equivalents." (Compl. ¶ 23.)  Cronas seeks to certify a class

consisting of all current and former female officers or officer-equivalents employed from 1998 to

the time of trial pursuant to Fed. R. Civ. P. 23(b)(3), and a class consisting of all current and

former female officers or officer-equivalents employed from 2002 to the time of trial pursuant to

Fed. R. Civ. P. 23(b)(2).  (Id. ¶ 20.)  In addition, Cronas asserts individual claims on her own

behalf, alleging that her demotion and termination were the result of unlawful gender

_____

[1] Hnot was scheduled for trial in June 2007.  However, the parties agreed in principle to settle the class claims shortly before trial.

3

discrimination.  (<u>Id</u>. ¶¶ 79-84.)[2]

Although the substantive allegations of Cronas's pattern and practice claim are almost "identical" to those in the <u>Hnot</u> litigation (Pl. Mem. 4), her claim differs from the <u>Hnot</u> claim in two ways.  First, while the <u>Hnot</u> litigation was limited to allegations of discrimination spanning the years 1998-2001, Cronas seeks relief for the period 2002 up to the time of trial, and certification of class claims for the entire period 1998 through the present.  (Compl. ¶ 20.) Second, Cronas alleges discrimination in compensation related to the distribution of stock options at Willis, a claim that was not pursued by the <u>Hnot</u> plaintiffs.  (<u>Id</u>. ¶ 42.  <u>See</u> Pl. Mem. 5 (stating that, "upon information and belief, no data have been produced in <u>Hnot</u> on stock options awards during the class period").)

Defendants moved to dismiss plaintiff's complaint on February 6, 2007; plaintiff responded on March 21, 2007.  The motion was fully briefed as of April 2, 2007.

## DISCUSSION

I.   <u>Failure To Satisfy Title VII Administrative Prerequisites</u>

A.   The Single-Filing Rule

Defendants argue that, because Cronas failed to file a timely charge of discrimination with the EEOC, her Title VII claims must be dismissed as time-barred.  Plaintiff argues that she should be permitted to "piggyback" on the timely charge filed by the <u>Hnot</u> plaintiffs pursuant to the so-called single-filing rule, thereby satisfying the administrative prerequisites of Title VII. Although the single-filing rule has not been previously applied to allow Title VII plaintiffs to

---

[2] Although the complaint alludes to a possible retaliatory motive for Cronas's termination (Compl. ¶ 44), Cronas does not assert an individual retaliation claim.

piggyback on a prior charge in a new Title VII suit, the Court finds that such an application is proper here. Therefore, plaintiff's Title VII claims are not time-barred, and defendants' motion will be denied.

It is axiomatic that "[a] Title VII claimant may file suit in federal court only if she has filed a timely complaint with [the] EEOC and obtained a right-to-sue letter." Cornwell v. Robinson, 23 F.3d 694, 706 (2d Cir. 1994), citing 42 U.S.C. §§ 2000e-5(e) and (f). See Weeks v. N.Y. State (Div. of Parole), 273 F.3d 76, 82 (2d Cir. 2001) (requiring a Title VII claimant to file an administrative charge within 300 days of the alleged discriminatory conduct); Butts v. City of N.Y. Dep't of Hous. Pres. & Dev., 990 F.2d 1397, 1401 (2d Cir. 1993) ("When a plaintiff fails to file a timely charge with the EEOC, the claim is time-barred."). As a general rule, however, Title VII's administrative prerequisites must be interpreted liberally to effectuate its purpose of eradicating employment discrimination. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 397 (1982). Fairness, and not excessive technicality, must guide the consideration of Title VII actions. Love v. Pullman Co., 404 U.S. 522, 526-27 (1972). Accordingly, the Supreme Court has held that Title VII filing requirements are not jurisdictional prerequisites and may be waived or tolled where equity requires. Zipes, 455 U.S. at 398. However, the courts must give substance to the underlying purpose of the filing procedures to convey "'prompt notice to the employer,' thereby encouraging conciliation wherever possible." Snell v. Suffolk County, 782 F.2d 1094, 1101 (2d Cir. 1986), quoting Zipes, 455 U.S. at 398.

With these principles in mind, the Second Circuit has adopted the "single-filing" rule. Under the single-filing rule, plaintiffs in class action discrimination suits have been allowed to "piggyback" their otherwise untimely claims on to those of timely filed named plaintiffs. Snell,

782 F.2d at 1101-02; Tolliver v. Xerox Corp., 918 F.2d 1052, 1057 (2d Cir. 1990) (extending

single-filing rule to Age Discrimination in Employment Act ("ADEA") claims).  Thus, a plaintiff

who has never filed an EEOC charge, and therefore has never given notice of her discrimination

complaint to either the employer or the EEOC, can still litigate her claims so long as they fall

"within the scope" of the timely filed claims.  Dargento v. Bally's Holiday Fitness Ctrs., 990 F.

Supp. 186, 193 (W.D.N.Y. 1997), citing Snell, 782 F.2d at 1100-1101.  The Circuit has applied

the single-filing rule to both class and individual actions, finding that the relevant inquiry for

application of the rule is not the type of action involved, but whether "the grievance affects a

group of individuals defined broadly enough to include those who seek to piggyback on the

claim," in order to "afford[] sufficient notice to the employer to explore conciliation with the

affected group."  Tolliver, 918 F.2d at 1058.

Until now, the single-filing rule has been applied to Title VII actions only to allow

subsequent claimants to join in a pre-existing action, and not to "permit non-filing Title VII

plaintiffs to initiate their own actions."  Little v. NBC, 210 F. Supp. 2d 330, 373 n.30 (S.D.N.Y.

2002).  However, in the ADEA context, the Circuit has found that subsequent claimants are not

relegated to joining a pre-existing action under the single-filing rule, but instead may take

advantage of a prior charge as a predicate for filing their own separate suit.  Tolliver, 918 F.2d at

1057.  In permitting ADEA plaintiffs to piggyback on a prior charge in a new suit, the Tolliver

court found that "[t]he purpose of the charge filing requirement is fully served by an

administrative claim that alerts the EEOC to the nature and scope of the grievance, regardless of

whether those with a similar grievance elect to join a preexisting suit or initiate their own."  Id.

The Tolliver also court found that, although the single-filing rule had not previously been applied

in a similar manner to new cases initiated under Title VII, there was a distinction between ADEA and Title VII suits because Title VII claimants may only initiate suit after obtaining a right-to-sue letter, while "[t]here is no comparable requirement for ADEA suits and therefore no reason to require ADEA plaintiffs seeking to benefit from the single filing rule to join preexisting individual suits." Id.

In this case, plaintiff seeks to initiate a new Title VII lawsuit while piggybacking on the Hnot EEOC charge in order to render her claim timely. Defendants argue that, because the Tolliver court distinguished between Title VII and ADEA claims, plaintiff cannot use the single-filing rule to render her claims timely. Defendants read too much into Tolliver. The Tolliver court held only that "[i]t is true that under Title VII, the single filing rule *has been used* only to permit [a plaintiff to] join[] a preexisting suit." Id. (emphasis added). Notably, the Tolliver court distinctly *did not* hold that the single filing rule *could never* be used to permit a plaintiff to initiate a new lawsuit. Nor, indeed, could it have so held, since the issue was not before the Circuit, which was addressing an action under the ADEA, not under Title VII. Instead, the Circuit merely noted in dicta that the single-filing rule has not yet been so applied to Title VII suits, and posited the right-to-sue letter requirement as the rationale for its heretofore non-application. In effect, the Court of Appeals held that *even if* Title VII did not permit a plaintiff to predicate her own action on another party's EEOC complaint, an ADEA plaintiff could. Therefore, it remains an open question, post-Tolliver, whether a Title VII plaintiff who seeks to piggyback on a prior EEOC charge to file a separate lawsuit may invoke the single-filing rule to render her claim timely.

To answer this question, the Court must consider whether such an extension of the single-

filing rule would frustrate the goals of Title VII's administrative prerequisites.  By finding that an ADEA plaintiff may piggyback on a prior charge in a new lawsuit without undermining the purposes of the ADEA's administrative prerequisites, the Circuit has already implicitly considered the same issue raised here.  Both the ADEA and the Title VII procedural requirements are motivated by the same dual purpose: prompt notice of the charge to the employer and the facilitation of conciliation where possible.  <u>Snell</u>, 783 F.2d at 1011.  (<u>See</u> Defs. Reply 2 ("Since <u>Snell</u> there has been no intervening case law altering the Second Circuit's rationale [behind the single-filing rule].").)  Accordingly, the issue here is almost identical to the issue in <u>Tolliver</u>, and therefore, it is a logical extension of <u>Tolliver</u> to find that, if the purposes of the *ADEA's* administrative requirements are not undermined by allowing a plaintiff to piggyback on a prior charge in a new *ADEA* lawsuit, then the purposes of *Title VII's* administrative requirements also are not undermined by allowing a plaintiff to piggyback on a prior charge to file a new *Title VII* lawsuit.

Although there is no conceptual distinction between allowing an ADEA plaintiff to initiate a new lawsuit rather than join a preexisting one and allowing a Title VII plaintiff the same opportunity, as the <u>Tolliver</u> court noted, there is a practical difference between the ADEA's and Title VII's procedural requirements.  Title VII requires a plaintiff to obtain a right-to-sue letter before initiating suit.  42 U.S.C. § 2000e-5(f)(1).  The EEOC issues a right-to-sue letter when the EEOC has investigated the charge and decided not file a civil suit itself.  <u>Pietras v. Bd. of Fire Comm'rs</u>, 180 F.3d 468, 473 (2d Cir. 1999).  The ADEA has no similar requirement, <u>see</u> <u>Hodge v. N.Y. Coll. of Podiatric Med.</u>, 157 F.3d 164, 168 (2d Cir. 1998); instead, the ADEA only requires a plaintiff to wait 60 days after filing an EEOC charge before initiating a lawsuit.

29 U.S.C. § 626(d).  Thus, an ADEA plaintiff is not required to receive written confirmation of the conclusion of the EEOC's investigation to initiate a lawsuit, but instead may "sue in court even if the EEOC has not yet completed its investigation or attempt[ed] . . . conciliation." Hodge, 157 F.3d at 168.  However, "a federal court, in its discretion, may elect to hear the action" even where a right-to-sue letter has not been issued, because "'like a statute of limitations, [Title VII's filing requirements are] subject to waiver, estoppel and equitable tolling.'"  Crossman v. Crosson, 905 F. Supp. 90, 93 (E.D.N.Y. 1995), quoting Zipes, 455 U.S. at 393.

The Tolliver court indicated that this distinction between the ADEA and Title VII may be a sufficient rationale for allowing ADEA plaintiffs to piggyback on prior charges in new suits, but not allowing Title VII plaintiffs the same opportunity.  Upon careful deliberation, the Court finds that this is not a persuasive argument, and that the right-to-sue letter should be waived under these circumstances.  A right-to-sue letter simply informs the claimant that the EEOC has concluded investigating the claimant's charge and provides the claimant with a notice of her right to bring a lawsuit.  The letter itself does not implicate the dual purposes of Title VII's administrative prerequisites, notice to the employer and potential conciliation; by the time the claimant receives the letter, those purposes have already been served.  Just as "[t]he purpose[s] of the charge filing requirement [are] fully served" when a prior charge "alerts the EEOC to the nature and scope of the grievance, regardless of whether those with a similar grievance elect to join a preexisting suit or initiate their own," Tolliver, 918 F.2d at 1057, those purposes are also served regardless of whether the subsequent plaintiff has obtained a right-to-sue letter.  The employer is not prejudiced by a subsequent plaintiff's failure to obtain a right-to-sue letter, as a

9

right-to-sue letter simply informs the *plaintiff-employee* of her rights; it is not a notice of rights

for, and provides no rights to, the *defendant-employer*.  In addition, just as "'it can fairly be said

that no conciliatory purpose would be served by filing separate EEOC charges,'" id. at 1058,

quoting Foster v. Gueory, 655 F.2d 1319, 1322 (D.C. Cir. 1981), similarly, no conciliatory

purpose would be served by requiring separate right-to-sue letters.  If the prior claimant received

a right-to-sue letter, there is no reason to conclude that a subsequent plaintiff would not also

receive an identical letter for the same charge.  Thus, there is no basis to conclude that the failure

of a subsequent Title VII plaintiff to obtain a right-to-sue letter would inhibit the goals of Title

VII's administrative prerequisites.

      Moreover, extending the single-filing rule to new Title VII lawsuits is actually *less* likely

to undermine the purposes of the EEOC charge requirement than the Circuit's previous extension

of the rule to new ADEA lawsuits in Tolliver.  Under the ADEA, there is no assurance that the

EEOC has attempted conciliation within 60 days, or that the employer has even been put on

notice of the claimant's charge.  Conversely, in the Title VII context, when a plaintiff receives a

right-to-sue letter, there is formal confirmation that the purposes of the administrative

prerequisite have been satisfied.  Thus, a subsequent plaintiff who seeks to rely on an EEOC

charge for which another claimant received a right-to-sue letter in a new Title VII lawsuit has

confirmation that the EEOC has investigated the prior charge, that the employer knows about the

charge, and that conciliation has not succeeded.

      The fact that only the original charging party, and not the subsequent plaintiff, received a

right-to-sue letter does not alter the fact that the purposes of the EEOC charge requirement have

been satisfied by the prior claimant.  As long as the claims of a subsequent Title VII plaintiff

otherwise fit within the single-filing rule, that is, as long as those claims are "within the scope" of the prior EEOC charge, Dargento, 990 F. Supp. at 193, there is no persuasive reason to require that the subsequent plaintiff also obtain a right-to-sue letter for the same charge that previously had been filed.  Requiring the subsequent plaintiff also to obtain a right-to-sue letter would elevate form over substance, as the only difference between the original right-to-sue letter and a subsequent one for the same charge would be the name of the claimant.  The EEOC itself "has interpreted the . . . filing requirements to be satisfied 'so long as the matter complained of was within the scope of [a] previously filed charge, *regardless of who filed it.*'"  Tolliver, 918 F.2d at 1057 (emphasis added), quoting 43 Fed. Reg. 138, 139 (1983).  Although Tolliver only considered the EEOC's interpretation of the ADEA's filing requirements, "[t]he ADEA administrative procedure is modeled on the Title VII procedure," id., and therefore it is reasonable to presume that the EEOC's interpretation of the ADEA prerequisites applies with equal force to Title VII's administrative prerequisites.  See, e.g., Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 309 (2d Cir. 1996) ("The EEOC's interpretation of Title VII and its terms is afforded great deference.").  Furthermore, a contrary rule would violate the fundamental principles of "leniency" and "fairness" that guide the determination of whether a Title VII plaintiff has complied with the administrative prerequisites, Garris v. Dep't of Corrections, 170 F. Supp. 2d 182, 188 (D. Conn. 2001), citing Butts, 99 F.2d at 1402, and would be "wasteful" to the EEOC's resources, EEOC v. Wilson Metal Casket Co., 24 F.3d 836, 840 (6th Cir. 1994), as it would require the EEOC to investigate a charge that had already been made and effectively reopen an investigation that had already concluded.

Finally, the Court's holding here is consistent with the Circuit's broad interpretation of

the single-filing rule.  The Circuit in <u>Tolliver</u> held that "mere similarity" between the timely filed

charge and the subsequent plaintiff's claims "within the same general time frame suffices to

permit [application of] the single-filing rule."  <u>Tolliver</u>, 918 F.2d at 1057 (internal quotation

marks omitted).  By so holding, the Circuit aligned itself with the "broadest" interpretation of the

single-filing rule.  <u>Id.</u>; <u>see id.</u> at 1058 (noting that the Circuit applied the same test in <u>Snell</u>).

Although whether Cronas's allegations are in fact sufficiently similar to the <u>Hnot</u> charge to

permit application of the single-filing rule is disputed, <u>see infra</u>, the Circuit's broad interpretation

of the rule is consistent with its extension to newly-filed Title VII suits here.[3]

_____

[3] Permitting Cronas to take advantage of Hnot's EEOC charge is particularly appropriate because Hnot's charge was filed on behalf of a class of which Cronas was a member.  The charge thus put defendants on specific notice that Hnot's complaints were not limited to her own specific situation.  Moreover, Cronas may well have been lulled into believing that her claims would be adequately pursued in Hnot's class action, and that it would not be necessary to file her own charge or pursue her own action.

The situation thus has some similarity to <u>In re Worldcom Securities Litigation</u>, ___ F.3d ___, 2007 WL 2127874 (2d Cir. July 26, 2007).  In <u>Worldcom</u>, the Circuit considered whether class members who file individual suits before class certification is resolved may benefit from the tolling required by <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974), which held that "[t]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class . . . ."  2007 WL 2127874, at *1.  The Circuit found that the class members' "time to file should have been tolled upon the filing of a class action purporting to assert their claims, regardless of their having also filed individual actions asserting the same claims."  <u>Id.</u> at *6.  In so finding, the Circuit determined that "[i]t would not undermine the purposes of statutes of limitations to give the benefit of tolling to all those who are asserted to be members of the class for as long as the class action purports to assert their claims."  <u>Id.</u> at *9.

Although <u>Worldcom</u> was not a Title VII suit, the Circuit's holding is instructive here.  Like the statute of limitations at issue in <u>Worldcom</u>, the purpose of Title VII's administrative prerequisites is to put "[a] defendant . . . on notice" of plaintiff's claims.  <u>Id.</u>  The <u>Worldcom</u> court found that "[a] defendant is no less on notice when putative class members file individual suits before certification" as when they do so after certification.  <u>Id.</u>  Similarly, here "[a] defendant is no less on notice" of plaintiff's claims when the plaintiff seeks to piggyback on a prior charge, but has not received a right-to-sue letter.  <u>Id.</u>  Furthermore, the Circuit rejected the argument that its holding would lead to a "needless multiplicity of actions" as insufficient to outweigh the individual plaintiffs' right to bring suit.  <u>Id.</u>  Instead, the Circuit found that the purpose of the statute of limitations was to put the defendant on notice of the class claims, and

Accordingly, the right-to-sue letter may be waived where a subsequent plaintiff seeks to piggyback on a timely filed charge in a new Title VII suit.

B.      Application of the Single-Filing Rule

Thus, Cronas is not precluded from piggybacking on the Hnot charge because she seeks to file a new action rather than join the prior action.  That conclusion, however, is not sufficient to resolve the issue before the Court.  As stated above, the single-filing rule only applies if the prior charge raised claims "similar to," and "within the same general time frame" as, the claim brought by the subsequent plaintiff.  Tolliver, 918 F.2d at 1057.  In determining whether the Hnot charge is sufficiently similar to Cronas's claims to permit application of the single-filing rule, the Court must consider whether plaintiff's claims are "reasonably related" to the claims made in that charge, "meaning that 'the conduct complained of [by plaintiff] would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.'"  Velez v. Novartis Pharms. Corp., No. 04 Civ. 9194, 2007 WL 2197800, at *8 (S.D.N.Y. July 31, 2007), quoting Holtz v. Rockefeller & Co., 258 F.3d 62, 83 (2d Cir. 2001).  The Second Circuit has described this principle as "essentially an allowance of loose pleading."  Holtz, 258 F.3d at 83 (internal citation and quotation marks omitted).

Defendants attack Cronas's claims piecemeal.  First, defendants argue that Cronas's pre-2002 claims are "completely different" in substance from those asserted in Hnot, and therefore are not reasonably related to the Hnot charge.  (Defs. Reply 3.)  Alternatively, defendants argue

not to provide defendants with protection from defending against "multiple actions in multiple forums."  Id.  Similarly, even if waiver of the right-to-sue letter requirement results in the "multiplicity of actions" against an employer, that potential result is "beside the point."  Id.  Instead, as long as the purpose of the administrative prerequisites has been fulfilled, the subsequent plaintiffs' suit should be permitted to proceed.

13

that Cronas's pre-2002 claims are "duplicative" of the claims in <u>Hnot</u>, and therefore must be dismissed.  (Defs. Mem. 5.)  Finally, defendants argue that Cronas's post-2001 claims "relate to a different time period" from the claims in the <u>Hnot</u> charge, and therefore are not reasonably related to that charge.  (Defs. Mem. 6.)

Defendants' first argument is easily disposed of.  It is clear, both to the Court and to defendants, that the majority of Cronas's allegations of discriminatory conduct are "reasonably related" in substance to those made in the <u>Hnot</u> charge.  (<u>See</u>, <u>e.g.</u>, Defs. Mem. 5 ("[T]he claims asserted [by Cronas] for the period prior to 2002 are duplicative of those asserted in the <u>Hnot</u> Class Action.").)  Cronas's complaint alleges, on behalf of herself and a putative class of women at Willis, that Willis discriminated against her in terms of "employment opportunities and benefits that were available to similarly situated male employees," for example, by compensating "female officers and officer-equivalents" less and promoting class members less often than their male counterparts.  (Compl. ¶ 19.)  The <u>Hnot</u> plaintiffs made the same claims, in the same expansive terms, on behalf of the same class that Cronas purports to represent.  228 F.R.D. at 480.  (<u>See</u> Herbst Decl. Exs. 1-2.)  Although Cronas also brings a claim for discriminatory treatment in Willis's distribution of stock options to the purported class (Compl. ¶ 42), a claim that "was not . . . pursued" by the <u>Hnot</u> plaintiffs (Pl. Mem. 5), the <u>Hnot</u> charge specifically alleges that Willis discriminated against the class in salaries, bonuses, and compensation. (Herbst Decl. Ex. 1, at 6-9.)  All of those terms could be reasonably interpreted to include the distribution of stock options.  Thus, "it would have been reasonable to suspect that the EEOC, in investigating [a] complaint of" discrimination in compensation, "would have assessed" Willis's distribution of stock options.  <u>Holtz</u>, 258 F.3d at 84.

14

Defendants' alternative (and opposite) argument is no more persuasive.  Although defendants argue that Cronas's claims are "completely different" from the claims in the Hnot charge (Defs. Reply 3), they also argue that those same claims should be dismissed as "duplicative" of those in the Hnot charge.  (Defs. Mem. 5.)  Defendants are correct that "duplicative class actions" should be "avoid[ed]."  Becker v. Schenley Indus., Inc., 557 F.2d 346, 348 (2d Cir. 1977); see Basch v. Ground Round, Inc., 139 F.3d 6, 11 (1st Cir. 1998) (rejecting "stacking" of subsequent class actions).  However, such cases should be dismissed only where "[p]laintiffs ha[ve] another, more readily available means by which to have their claims determined," Becker, 557 F.2d at 348, or where "the equities of the situation" favor dismissal, for example, because the plaintiff may pursue the same claims through the other action.  Curtis v. Citibank, N.A., 226 F.3d 133, 136 (2d Cir. 2000).  That is not the case here.  Although there is certainly a "resemblance between the two suits," the claims asserted by Cronas are not "the same" as those asserted in Hnot, and therefore plaintiff would not receive all the relief in Hnot to which she may be "entitled."  Curtis, 226 F.3d at 136-38; see id. at 136 (cautioning against dismissing a suit as a result of a "resemblance" with another suit where "the claims asserted in both suits" are not "the same").

For example, while Cronas alleges discrimination in defendants' distribution of stock options, the same claim was not pursued in Hnot.  According to Cronas, this claim "could amount to more than $700,000 in economic loss to Ms. Cronas [alone] during the class period." (Pl. Mem. 5.)  In addition, while the Hnot class is certified pursuant to Fed. R. Civ. P. 23(b)(2), Hnot, 228 F.R.D. at 486, Cronas seeks certification pursuant to Fed. R. Civ. P. 23(b)(3) for all claims, including those stemming from the Hnot class period.  (Compl. ¶ 20.)

Furthermore, while the Hnot class was only certified through 2001, Cronas seeks to certify a class "from 1998 to the time of trial." (Id.)  Thus, if Cronas was not permitted to bring this action, she would be precluded from receiving relief for any harm incurred after 2001 due to defendants' alleged discriminatory conduct.  Indeed, the Court denied Cronas's motion to intervene on the assumption that Cronas would not suffer "significant prejudice" as a result of that denial, not because her participation as a class member in Hnot would provide her with all of her requested relief, but because "she remain[ed] free to bring a separate action against defendants" through which she might be able to obtain that relief.  2006 WL 3476746, at *5. Accordingly, the Court cannot say at this time that Cronas would receive "all the relief to which [s]he might be entitled" through the Hnot action, and therefore her claims should not be dismissed as duplicative.  Curtis, 226 F.3d at 139-40 (dismissing as duplicative those allegations in the second action that plaintiffs could have raised in the first action given their named plaintiff status in that action).  Cf. id. at 138 (a district court's discretion to dismiss duplicative suits arises out of its "general power to administer its docket"), citing Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976).[4]

Finally, defendants argue that "[t]he Second Circuit has only permitted individual plaintiffs to utilize the single-filing rule when the claims of the new party arise out of similar discriminatory treatment *in the same time frame* as the timely-filed EEOC charges."  (Defs. Mem. 6 (emphasis in original), citing Snell, 782 F.2d at 1101.)  Plaintiff's claims clearly do not fall within the same exact time frame as those in the Hnot charge – while the Hnot charge was

---

[4] Some of Cronas's claims – such as the claims for salary discrimination through the year 2001 – do overlap with those at issue in Hnot.  Whether those claims can be pursued as class claims will better be addressed at a later stage of this litigation.

filed in 1999, plaintiff alleges a pattern and practice of discrimination "from 1998 up until trial" (Compl. ¶ 20), whenever and if ever that occurs in the future.

However, defendants' argument fails for several reasons.  First, defendants are incorrect that plaintiff's claims must be within *the same* time frame as those asserted in the Hnot charge. Exact duplication of a time frame is unnecessary to satisfy the single-filing rule; instead, "mere similarity of grievances within the same *general* time frame suffices to permit operation of the single filing rule." Tolliver, 918 F.2d at 1058 (emphasis added).  Moreover, exact temporal similarity in pattern and practice discrimination claims is impractical, as the discriminatory conduct alleged in such claims is not a discrete, isolated event.  Instead, plaintiff correctly notes that "[a]llegations of continuous, ingrained practices," such as those made by Cronas here, "are not conducive to a narrowly delimited time frame."  (Pl. Mem. 8.)  See Wilson Metal, 24 F.3d at 840 (holding that, "[b]ecause the practice of sexual harassment . . . continued over a three year period," plaintiff who filed suit in 1987 may rely on EEOC filing by similar sexual harassment victim discharged in 1984); see, e.g., Butts, 990 F.2d at 1403 ("[T]he values associated with exhaustion [of remedies under Title VII] are not . . . lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents.").

Moreover, holding a Title VII plaintiff who seeks to piggyback on a prior claim in a new suit to such a high temporal standard as that suggested by defendants would be incongruous, as the very nature of piggybacking necessarily means that the plaintiff is bringing suit *at a later date*, and therefore, that the discriminatory conduct alleged in the suit was not limited to the time frame in the original charge.  See Alemendral v. N.Y. State Office of Mental Health, 743 F.2d

963, 967 (2d Cir. 1984) (district court erred in refusing to consider discriminatory conduct that occurred after plaintiff filed her EEOC complaint, as "a court may consider, in addition to the original EEOC charges, those claims reasonably related to the EEOC charge").  Thus, the proper inquiry is not whether Cronas's claims occurred in the same time frame as those in the Hnot charge, but whether her claims "plainly state[] that the acts of discrimination were on a 'continuing' basis" in such a way as those acts "could 'reasonably [have been] expected to grow out of the" Hnot charge.  Almendral, 743 F.2d at 968, quoting Smith v. Amer. Pres. Lines, 571 F.2d 102, 107 n.10 (2d Cir. 1978).

When viewed through this lens, Cronas's claims clearly satisfy the single-filing rule. First, while the claims in Hnot were limited to pre-2002 conduct, Cronas's claims include both pre- and post-2002 conduct.  Thus, a significant portion of Cronas's claims overlap in time with those in Hnot.  Second, both Cronas and the Hnot plaintiffs allege a pattern and practice of discrimination at Willis; as noted supra, the very nature of a pattern and practice claim is that it occurs on a "continuing basis," and therefore the acts alleged by Cronas "could 'reasonably [have been] expected to grow out of the" Hnot charge, id., even if some of the acts alleged by Cronas extend temporally beyond those considered in the Hnot litigation.

Furthermore, the Hnot plaintiffs attempted to extend the class claims to include discriminatory conduct that allegedly occurred through 2004.  Hnot, 2006 WL 2381869. Although the Hnot plaintiffs were not allowed to extend the class claims beyond 2001, the denial of that extension was due, not to concerns that the original charge did not put Willis on notice of the post-2001 claims or that those claims were not reasonably related to the EEOC charge, but to the fact that plaintiffs had not adequately pursued those claims during discovery.  Id. at *4.

18

Finally, Cronas's employment at Willis overlapped by several years with that of the Hnot charging parties.  (See Pl. Mem. 10 n. 6.)  During those overlapping years, Cronas allegedly experienced much of the same discriminatory conduct as that experienced by the Hnot plaintiffs. Even if the exact time frame in which the parties experienced discrimination was not "identical," duplication of a time frame is not required to satisfy the single-filing rule, especially where the claims are "generically similar."  Connelly v. Mfs. Hanover Trust Co., No. 89 Civ. 2247, 1990 WL 129186, at *3 (S.D.N.Y. Aug. 13, 1990).

Thus, Cronas's claims are reasonably related, both substantively and temporally, to the claims in the Hnot charge, and the single-filing rule applies to her suit.  Accordingly, Cronas's Title VII claims are not time-barred, and defendants' motion to dismiss is denied.[5]

II.    Mandatory Arbitration

Finally, defendants argue that Cronas's claims should be dismissed because she may only pursue her claims through arbitration.  Specifically, defendants argue that Cronas's employment agreement requires that any claims arising under the Agreement be resolved by arbitration. (Defs. Mem. 9.)[6]  Plaintiff argues that her claims do not fall within the scope of the Agreement, and therefore that her claims are not subject to arbitration.  (Pl. Mem. 19.)  The Court agrees.

The Federal Arbitration Act ("FAA") establishes a federal policy favoring arbitration.

---

[5] Defendants also argue "[a]bsent a viable federal claim of discrimination, Cronas should not be permitted to proceed with state law claims in federal court."  (Defs. Mem. 7, citing 28 U.S.C. § 1367(c)(3).)  Because the Court finds that plaintiff's federal claims are indeed "viable" (id.), defendants' supplemental jurisdiction argument is moot.

[6] Defendants made an identical argument in opposing Cronas's motion to intervene, but the Court did not address the argument at that time because the Court found Cronas's motion to be otherwise untimely.  Hnot, 2006 WL 3476746, at *5 n.2.

Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 225-26 (1987); Scherk v. Alberto-Culver Co., 417 U.S. 506, 510-11 (1974).  The FAA requires the federal courts to enforce arbitration agreements with the same vigor that the courts enforce other contracts.  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985).  Once a court is satisfied that an arbitration agreement is valid and the claim before it is arbitrable, it must stay further judicial proceedings and order the parties to proceed to arbitration.  Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela, 991 F.2d 42, 45 (2d Cir. 1993), citing Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (2d Cir. 1987).  Moreover, the court must enforce an arbitration agreement even if the party opposing arbitration raises a claim based on a federal statutory right, assuming that party has in fact agreed to arbitrate such claims.  McMahon, 482 U.S. at 226; Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626-27 (1985).

In Genesco, the Second Circuit outlined a four-prong test for a district court to follow in considering a motion to compel arbitration in the context of a claim based on statutory rights:

> [F]irst, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the case are arbitrable, it must then determine whether to stay the balance of the proceedings pending arbitration.

Genesco, 815 F.2d at 844, citing Mitsubishi Motors Corp.,473 U.S. 614.

Here, the first and third prong of the Genesco test are not at issue.  Federal employment discrimination claims are generally arbitrable, see Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35 (1991) (ADEA claims arbitrable); Elwell v. Google, Inc., No. 05 Civ. 6498, 2006 WL 217978, at *4 (S.D.N.Y. Jan. 30, 2006) (Title VII claims based on gender discrimination and

retaliation arbitrable); <u>Maye v. Smith Barney Inc.</u>, 897 F.Supp. 100, 109-10 (S.D.N.Y. 1995)
(Title VII claims based on sexual harassment arbitrable); <u>Hall v. MetLife Resources</u>, No. 94 Civ.
0358, 1995 WL 258061, at *3 (S.D.N.Y. May 3, 1995) (Title VII claims based on gender and
race discrimination arbitrable), and Cronas does not dispute that she agreed to an arbitration
clause when she signed the employment contract.  However, Cronas argues that, although she
agreed to an arbitration clause, that clause was limited in scope, requiring arbitration only of
those disputes "arising under th[e] Agreement."  (Herbst Decl. Ex. 4, at ¶ 5.)  Thus, the relevant
inquiry is whether plaintiff's discrimination claims fall within the scope of the Agreement's
arbitration clause.

While the scope of an arbitration agreement must be read in light of Congress's policy
favoring arbitration, the reviewing court must decide whether a party's claims actually fall within
that scope.  <u>Progressive</u>, 991 F.2d at 45, citing <u>David L. Threlkeld & Co. v. Metallgesellschaft,
Ltd.</u>, 923 F.2d 245, 249 (2d Cir. 1991).  Generally, the court must broadly construe an arbitration
agreement and resolve any doubts concerning its scope in favor of arbitration.  <u>Moses H. Cone
Memorial Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983); <u>Mitsubishi Motors</u>, 473
U.S. at 626.  The Second Circuit has interpreted this mandate to require arbitration "unless it may
be said with positive assurance that the arbitration clause is not susceptible to an interpretation
that covers the asserted dispute."  <u>Roby v. Corp. of Lloyd's</u>, 996 F.2d 1353, 1361 (2d Cir. 1993);
<u>see</u> <u>Progressive</u>, 991 F.2d at 48.

In deciding the scope of an arbitration agreement, "courts should generally apply state-
law principles that govern the formation of contracts."  <u>Mehler v. Terminix Int'l Co. L.P.</u>, 205
F.3d 44, 48 (2d Cir. 2000).  Under New York law, one "who signs or accepts a written contract,

in the absence of fraud or other wrongful act on the part of another contracting party, is

conclusively presumed to know its contents and to assent to them . . . ." Metzger v. Aetna Ins.

Co., 227 N.Y. 411 (1920); see Matter of Express Indus. & Term. Corp. v. N.Y. State Dep't of

Transp., 93 N.Y.2d 584, 589 (1999) (in order to form a binding agreement, the parties must

manifest "mutual assent" to the essential terms of the agreement).  Courts in this district that

have considered whether discrimination claims were subject to arbitration clauses have not

compelled arbitration simply because, as a result of a broadly worded arbitration clause, the

employment agreement *could potentially be* interpreted in such as a way as to require arbitration

of those claims.  See Hoffman v. Aaron Kamhi, Inc., 927 F. Supp. 640, 645 (S.D.N.Y. 1996).

Instead, courts have required employees to arbitrate discrimination claims only where the

arbitration clause specifically "*placed the employee plaintiff on notice* that he or she was waiving

his or her right to bring employment discrimination claims in the federal courts."  Id. at 644

(emphasis added).  See Cap Gemini Ernst & Young U.S. LLC v. Arentowicz, No. 04 Civ. 0299,

2004 WL 1386145, at *6 (S.D.N.Y. June 22, 2004) (compelling arbitration of discrimination

claims where arbitration agreement required arbitration of "any dispute . . . concerning any . . .

aspects of your employment relationship, including, without limitation, discrimination claims");

Maye, 897 F.Supp. at 107 (arbitration agreement referred to "employment disputes," which was

specifically defined to include claims under Title VII and other employment statutes; court held

that the agreement signed "could not have done more to put [plaintiffs] on notice" that they were

waiving their right to bring employment discrimination claims in federal court); DeGaetano v.

Smith Barney, Inc., No. 95 Civ. 1613, 1996 WL 44226, at *5 (S.D.N.Y. Feb. 5, 1996)

(arbitration agreement referred to "employment disputes," which was defined specifically to

include claims under Title VII and other employment statutes).  Conversely, where the arbitration

clause is "poorly worded and ambiguously phrased" in such a way that the employee was not "on

notice" that she was waiving her right to bring a discrimination claim in federal court, courts

have rejected employers' attempts to compel arbitration.  Hoffman, 927 F. Supp. at 644.  This is

consistent with the general contract principle that a party is only bound to a contract term to

which she has actually agreed.  See Express Indus., 93 N.Y.2d at 589.

      The arbitration clause in the Agreement requires arbitration of any dispute that "aris[es]

under th[e] Agreement."  (Herbst Decl. Ex. 4, at ¶ 5.)  Cronas's claims do not arise under her

employment agreement, but rather under federal and state anti-discrimination statutes.  Thus, the

arbitration clause did not put Cronas on notice that she was waiving her right to pursue claims of

employment discrimination in federal court.  Indeed, the Agreement's arbitration clause, like the

one rejected in Hoffman, is "poorly worded and ambiguously phrased."  927 F. Supp. at 645.

The phrase "arising under this Agreement" is not defined in the clause, and none of the

provisions of the Agreement make reference to the civil rights statutes or to discrimination

claims generally.  See id.  Accordingly, the clause contains no language that would have

reasonably notified plaintiff that she was waiving her right to litigate federal employment

discrimination claims in federal court.

      Nevertheless, defendants argue that "courts in the Second Circuit have compelled

employees to arbitrate discrimination claims where the employees had employment agreements

with broad, mandatory arbitration clauses similar to the provision contained in Cronas'[s]

employment agreement."  (Defs. Mem. 9.)  However, the majority of cases cited by defendants

are inapposite, as they either involved arbitration clauses which specifically referred employee

discrimination claims to mandatory arbitration (see Defs. Mem. 10, citing Cap Gemini, 2004 WL

1386145), or involved arbitration clauses that required arbitration of not only disputes "arising

under" the employment agreement, but disputes arising "in connection" with that agreement,

Oldroyd v. Elmira Sav. Bank, FSB, 134 F.3d 72, 74 (2d Cir. 1998), or "relating to any

interpretation, construction, performance or breach" of that agreement, Elwell, 2006 WL 217978,

at *1.  Thus, those clauses are distinguishable from the clause at issue in this case, as they

arguably encompassed disputes, not only over the exact terms of the employment agreement, but

over any condition of plaintiff's employment, even where those conditions had only an indirect

"connection" to that agreement.  Oldroyd, 134 F.3d at 74.

        In addition, the retaliatory discharge claim in Oldroyd bore a much stronger connection to

the employment agreement in that case than Cronas's discrimination claim bears to the

agreement at issue here.  In Oldroyd, plaintiff claimed that he had been terminated due to

protected whistleblower activity.  134 F.3d at 75.  The employment agreement in Oldroyd laid

out in detail "such matters as what constitutes 'cause' for termination, benefits to be provided

after termination, . . . termination upon change of control, and related matters."  Id. at 77.  Thus,

the Circuit found that, because plaintiff's employment agreement laid out termination procedures

in such great detail, his retaliatory discharge claim "touched upon matters covered by the

employment agreement and therefore [was] clearly within the scope of the agreement's

arbitration clause."  Id.

        The bulk of Cronas's claims concern unequal compensation and promotion opportunities

for class members.  Unlike the employment agreement in Oldroyd, the agreement at issue in this

case contains little detail about termination procedures (Herbst Decl. Ex. 4, at ¶ 4), and almost no

detail about compensation procedures.  (Id. at ¶ 5 (stating that Willis "will pay Employee such

compensation and benefits as are set forth in the offer letter [which] . . . may be changed by

[Willis] pursuant to its normal compensation and benefit review procedures").)  Moreover,

promotion procedures are not even mentioned in the Agreement.  Thus, unlike Oldroyd, Cronas's

claims do not "touch[] matters" covered by her employment agreement, 134 F.2d at 77, and

therefore her claims do not fall within the scope of the arbitration clause.

Finally, although "[d]oubts regarding the scope of an arbitration clause should be

resolved in favor of arbitration," Moses H. Cone Memorial Hosp., 460 U.S. at 24, they should

not be so resolved at the expense of "a reasonable reading of the Agreement, in light of" the

understanding of the parties at the time that they entered into the employment contract.  Mehler,

205 F.3d at 49.  The Agreement itself is extremely limited in scope, outlining only in very broad

terms the scope of the employment relationship.  Paragraph 1 of the Agreement asserts only that

Willis agrees to employ Cronas for the period of the agreement, and to pay her the proffered

compensation, which Willis can change pursuant to its normal compensation review procedures.

(Herbst Decl. Ex. 4.)  Paragraph 4 of the Agreement states that Cronas is an at will employee

who may be terminated with two weeks notice.  (Id.)  The remainder of the Agreement, with the

exception of the arbitration clause, deals with issues completely unrelated to anything alleged by

Cronas here, such as confidentiality and employee loyalty.  (Id. ¶¶ 2-3 (see Herbst Decl. Ex. 3, at

¶ 3 (characterizing employment agreement as a "standard non-compete agreement").)  It would

be unreasonable to expect an employee who signs this type of employment agreement to

understand that, by signing the agreement, which says nothing about subjecting discrimination

claims to arbitration, she was implicitly signing away her right to bring such claims in federal

court, simply because the agreement states that she is an at will employee who will receive compensation for her employment.

It is not difficult for parties who wish to provide for arbitration of employment discrimination claims to draft a provision that clearly covers such disputes. The arbitration clause in this employment agreement, however, covers only "disputes arising *under the Agreement*" (Herbst Decl. Ex. 4, at ¶ 5 (emphasis added)), and discriminatory conduct such as that alleged by Cronas is not a term of employment under the contract. Therefore, plaintiff's discrimination claims do not fall within the scope of the arbitration clause.

Accordingly, defendants' motion to compel arbitration of plaintiff's claims is denied.

## CONCLUSION

For the foregoing reasons, defendants' motion is denied.


SO ORDERED.

Dated: New York, New York
      September 17, 2007

GERARD E. LYNCH
United States District Judge

26