PROSKAUER ROSE LLP
Bettina B. Plevan
Myron D. Rumeld
Jeremy M. Brown
Eleven Times Square
New York, New York 10036-8299
Telephone: 212.969.3000
Facsimile: 212.969.2900
bplevan@proskauer.com
*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――――― x
ADRIANNE CRONAS and LINDA PASICHNYK, :
individually and on behalf of all similarly situated : Civil Action No. 06-CV-15295
persons, : (RMB)(DCF)
:
Plaintiffs, :
: **ECF Case**
vs. :
:
WILLIS GROUP HOLDINGS LTD., WILLIS :
NORTH AMERICA INC., WILLIS OF NEW :
YORK, INC., WILLIS OF NEW JERSEY, INC., :
and WILLIS OF MASSACHUSETTS, INC., :
:
Defendants. :
――――――――――――――――――――――― x

# DEFENDANTS' MEMORANDUM OF LAW
# IN RESPONSE TO PLAINTIFFS' MOTION FOR
# PRELIMINARY APPROVAL OF CONSENT DECREE

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

PROCEDURAL HISTORY....................................................................................................2

ARGUMENT..........................................................................................................................3

    I.   The Court Must Independently Evaluate The Proposed Consent Decree, Including The Criteria For Class Certification........................................................................3

    II.  *Wal-Mart* Casts Doubt As To Whether Plaintiffs Can Satisfy The Class Certification Requirements Under Rule 23(a) ......................................................4

    III. *Wal-Mart* Casts Doubt As To Whether Plaintiffs Can Satisfy The Class Certification Requirements Under Rule 23(b)(2) .................................................7

CONCLUSION.......................................................................................................................9

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                                                  **PAGE(S)**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................................3

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)......................................................................................................3

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011)........................................................................................1, 5, 7, 8

*Walter v. Hughes Comm'n, Inc.*,
   No. 09-2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011)...................................4


**OTHER AUTHORITIES**

Fed.R.Civ.P. 23......................................................................................................................3

Fed.R.Civ.P. 23(a) ............................................................................................................1, 4

Fed.R.Civ.P. 23(b) ...................................................................................................3, 7, 8, 9

Fed.R.Civ.P. 23(e) ............................................................................................................1, 3

**PRELIMINARY STATEMENT**

Defendants submit this memorandum of law in response to Plaintiffs' motion for preliminary approval of the proposed Consent Decree, in particular for the purpose of assisting the Court in addressing the impact of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) on the question of class certification for settlement purposes in this matter.

Although Plaintiffs' brief makes reference to the Supreme Court's recent *Wal-Mart* decision, it does not fully address the Court's holding. We believe that *Wal-Mart* presents two obstacles to class certification, and thus to approval of the proposed Consent Decree, that we believe the Court may find to be insurmountable. First, the Supreme Court held that the commonality standard under Rule 23(a) cannot be satisfied where the underlying theory of liability is based on an alleged overdelegation of personnel decisions to lower level supervisors with unfettered discretion. That is the very theory asserted by the Plaintiffs in this case.

Second, the Supreme Court held that employment discrimination claims for substantial monetary relief cannot be certified under Rule 23(b)(2) because: (i) that provision only allows claims for declaratory and injunctive relief; and (ii) certification under (b)(2) would threaten the due process rights of class members by extinguishing their claims without allowing for the right to opt-out. The Supreme Court's rationale is readily applicable here because the complaint sought and the proposed Consent Decree provides for an award of millions of dollars to class members, with no opt-out rights, based on individualized back pay calculations, without making any allowances for class members' unique claims for compensatory (i.e. emotional distress) damages.

Pursuant to Rule 23(e) and applicable Supreme Court authorities, the Court has a duty to conduct an independent evaluation of the proposed Consent Decree, including the standards for class certification. Contrary to Plaintiffs' assertions, the fact that the parties agreed to the terms

of a proposed Consent Decree before *Wal-Mart* does not eliminate the Court's independent responsibility to review the settlement based on the current state of the law on class certification, just as it would if it were deciding a contested motion for class certification.  Accordingly, based on our reading of the *Wal-Mart* decision, we believe it would be problematic for the Court to certify the class for settlement purposes and, therefore, problematic to grant preliminary approval of the proposed Consent Decree.

## **PROCEDURAL HISTORY**

On October 26, 2010, Plaintiffs' motion for class certification and Defendants' motions for summary judgment were fully briefed and submitted to the Court.  While the motions were pending, the parties engaged in private mediation.  An agreement in principle was reached on January 6, 2011.

Thereafter, the parties negotiated the terms of a proposed Consent Decree and individual settlement agreements for the named plaintiffs.  On May 6, 2011, Plaintiffs submitted a proposed Consent Decree, Class Notice, and a motion for preliminary approval.  Defendants did not oppose the motion.  During a court conference on June 7, 2011, the Court expressed concerns about certain provisions of the proposed Consent Decree, including class representative bonus awards, attorneys' fees, and other items.

On June 20, 2011, the Supreme Court issued its decision in *Wal-Mart*.  Although the parties continued to negotiate the outstanding terms of the proposed Consent Decree based on the Court's concerns, Defendants repeatedly expressed their strong reservations as to whether the Court could properly approve a proposed Consent Decree for the proposed 23(b)(2) class in light of the *Wal-Mart* decision.  Accordingly, Defendants did not sign the proposed Consent Decree.  Plaintiffs submitted the revised proposed Consent Decree and Class Notice with their motion for preliminary approval on August 25, 2011.

## ARGUMENT

### I.

### The Court Must Independently Evaluate The Proposed Consent Decree, Including The Criteria For Class Certification

Under Rule 23(e), the claims, issues, or defenses of a certified class may be settled only with the court's approval.  Fed. R. Civ. P. 23(e).  Where, as here, no class has been certified, the Court must first determine whether to certify a class for settlement purposes, and in doing so, must apply the same standards for evaluating class certification under Rule 23(a) and (b) as it would when considering a motion for class certification.  *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Indeed, courts have held that the evaluation of the class certification criteria requires *closer* judicial scrutiny in the context of a settlement than where a case is actively being litigated.  *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999) (imposing strict standards on certification of a mandatory settlement class under Rule 23(b)(1)(B)); *Amchem,* 521 U.S. at 620 (holding that the requirements of Rule 23, which were designed to protect the rights of absent class members, "demand undiluted, even heightened attention in the settlement context").  As the Supreme Court observed in *Amchem,* the "dominant concern" of Rule 23 – that a proposed class has sufficient unity to bind absent class members to decisions made by class representatives – persists even in the settlement context.  521 U.S. at 621.

Due process concerns guide a district court's analysis of class certification for settlement purposes.  As the Supreme Court explained in *Ortiz v. Fibreboard Corp.*, certification of a mandatory settlement class "effectively concludes the proceeding save for the final fairness hearing," and the Rule 23(e) fairness hearing "is no substitute for rigorous adherence to those provisions of the Rule 'designed to protect absentees.'"  527 U.S. at 849.

3

In light of the Court's independent responsibility to apply and evaluate the class certification criteria, the cases cited by Plaintiffs regarding the impact of a change in law on a pre-existing agreement are inapposite.  (*See* Pl. Br. at 10-11.)  In fact, one court has already applied the class certification standards delineated in *Wal-Mart* in reviewing a proposed class settlement, even though the settlement was submitted (unopposed) prior to *Wal-Mart*.  *See Walter v. Hughes Comm'n, Inc.,* No. 09-2136 SC, 2011 WL 2650711 (N.D. Cal. July 6, 2011).  In short, notwithstanding the fact that the substantive terms of the proposed Consent Decree were agreed to before *Wal-Mart*, we believe the Court must apply *Wal-Mart* for purposes of fulfilling its independent responsibility to determine whether a settlement class should be certified.

## II.

### *Wal-Mart* Casts Doubt As To Whether Plaintiffs Can Satisfy The Class Certification Requirements Under Rule 23(a)

*Wal-Mart* establishes that Rule 23(a)'s commonality standard cannot be satisfied in a suit based on a theory of pattern and practice discrimination in which the discrimination results from Defendants' overdelegation of decision-making authority to lower level supervisors with unfettered discretion.  This is the precise theory Plaintiffs have advanced in this case to support an alleged class.  (*See* Docket #30, First Amended Complaint at ¶¶ 24, 84-92.)  There does not appear to be any plausible rationale for distinguishing *Wal-Mart's* holding, and, therefore, we struggle to see how the proposed Consent Decree can be approved.

Specifically, in reversing an earlier class certification order by the U.S. Court of Appeals for the Ninth Circuit, the Supreme Court in *Wal-Mart* found that plaintiffs had failed to demonstrate commonality under Rule 23(a)(2).  The Court specifically rejected the theory that the commonality standard could be satisfied based on the contention that there was a common

4

practice of delegating subjective decision-making responsibilities to lower level supervisors who then engaged in discriminatory conduct. The Court explained that to establish commonality, "claims must depend upon a common contention – for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 2554-55.

Here, like the plaintiffs in *Wal-Mart*, Plaintiffs alleged in the First Amended Complaint that Willis of New York, Inc. ("WNY") supervisors "were entrusted with *unfettered discretion* in the discharge of their duties, which has afforded them the opportunity to apply their own personal preferences and biases to employment decisions. Collectively, these decisions constitute a practice that is *excessively subjective* and has no legitimate business justification." (First Amended Complaint at ¶ 21 (emphasis added).) Consistent with their theory of the case, Plaintiffs enumerated in the Complaint the following questions of law or fact common to the class:

    (a)    whether WNY permitted managers excessive subjectivity in making promotion decisions;

    (b)    whether WNY permitted managers excessive subjectivity in making compensation decisions;

    (c)    whether excessive subjectivity had a disparate impact on female officers and officer-equivalents; and

    (d)    whether excessive subjectivity represented a deliberate action by WNY to block promotion of female officers and officer-equivalents and to compensate female officers and officer equivalents less than similarly situated males.

(First Amended Complaint at ¶ 24.)

Plaintiffs' memorandum of law in support of class certification likewise contended that there was a "single [] policy of vesting managers with virtually unfettered discretion to make subjective compensation and promotion decisions."  (Docket #83, Pl. Class Cert. Br. at 3.)  This policy, Plaintiffs argued, resulted in a common practice of "overdelegating" subjective decision-making authority to "team leaders and subordinate managers" who allegedly had "unfettered discretion" to make discriminatory promotion and compensation decisions.  (Pl. Class Cert. Br. at 1-2, 13-15.)

Although Plaintiffs acknowledge that their class theory is based on overdelegation to lower level managers, Plaintiffs, in their motion, seek to distinguish *Wal-Mart* by arguing that their suit challenges the actions "made at one office, essentially by one decision-maker" (whose identity is not revealed).  (Pl. Br. at 11.)  While we appreciate Plaintiffs' efforts to distinguish this case from *Wal-Mart*, the record in this case does not support such a distinction.  It is undisputed that during the relevant time period responsibility for employment decisions in WNY was allocated among several team leaders and managers in WNY who were each in charge of separate business units with different reporting relationships, such as: Aerospace, Property and Casualty, Energy, Environmental, Employee Benefits, Marine, Fine Art and Jewelry, Kidnapping and Special Risk, Korean practice, and Japan practice.  (Docket #101, Hatrak Aff.)  These supervisors and managers in turn reported up to at least three distinct managerial groups in various departments and locations.  (Hatrak Aff.)

Moreover, while some groups – or teams – reported to WNY management, others – including the WNA National Claims, National Mergers and Acquisitions, and NY Financial Executive Risk teams – all reported directly to Willis North America Inc. ("WNA"); and the Mergers and Acquisitions, Marine, Aerospace, Special Contingency Risk, and Structured

6

Financial Solutions teams reported to the U.K.  (Docket #104, Brown Decl., Ex. I, Steers Tr. 35:13–39:24; Brown Decl. Ex. H, Smith Tr. 229:4–232:24; Hatrak Aff.)  In total, 25–30% of WNY's employees reported to management groups outside the management structure of WNY. (Brown Decl. Ex. M, Haworth Report, p. 14.)  Before 2004, the reporting structure was even more diffuse because several teams that later reported to WNY reported then to the U.K. or operated independently.  (Brown Decl., Exs. G-H, Smith Tr. 13:20–14:2, 24:2–9, 33:4–35:19, 384:6–14; Brown Decl. Ex. J, Vitale Tr. 25:13–24, 26:17–25; Brown Decl. Ex. E, McSweeny Tr. 18:7–20, 22:12–18, 27:17–28:13; Brown Decl. Ex. F, Nylund Tr. 26:3–27:2; Hatrak Aff.)

In short, we do not believe there is an adequate basis for the Court to hold that Rule 23(a)'s commonality requirement can be satisfied in this case based on Plaintiffs' pattern and practice "overdelegation" theory.  Just as in *Wal-Mart*, a court could readily conclude that the Plaintiffs here "have not identified a common mode of exercising discretion that pervades the entire company," and thus there is no common contention that is "capable of classwide resolution."  *Wal-Mart*, 131 S. Ct. at 2551, 2554-55.

### III.

### *Wal-Mart* Casts Doubt As To Whether Plaintiffs Can Satisfy The Class Certification Requirements Under Rule 23(b)(2)

Although the Supreme Court in *Wal-Mart* was divided on the commonality issue, it was unanimous in holding that claims seeking monetary damages, including backpay claims, could not be certified under Rule 23(b)(2).  *Id.* at 2557.  While the Supreme Court left open the possibility that there might be a narrow exception where the monetary relief was incidental to injunctive relief, this exception would not appear applicable here, where Plaintiffs seek primarily monetary damages (Docket #100, Defs. Opp. to Class Cert. Br. at 17-20), and the proposed

7

Consent Decree contemplates several million dollars of backpay to the class members. *See Wal-Mart,* 131 S.Ct. at 2557-61.

The fact that the proposed Consent Decree would provide monetary relief pursuant to a prescribed schedule, and thus avoid the need for separate hearings, would not appear to alter the conclusion that the monetary relief in this case would predominate, rather than be incidental. Arguably, the decree could make matters worse by fueling the due process concerns that provoked the Supreme Court's ruling in *Wal-Mart.* The Court expressed concern that, because Rule 23(b)(2) classes do not permit opt-outs, they compromise the rights of class members with unique monetary claims. This concern is particularly pronounced where, as here, the proposed Consent Decree makes no allowance for the class members' claims for compensatory damages. *See id.* at 2557-58.

We do not believe that these due process concerns would be cured by Plaintiffs' suggestion of amending the Class Notice to advise class members that they have a right to object and, on the basis of their objection, the Court could decide not to approve the settlement. Such a notification could actually chill the exercise of the rights of class members to object. Moreover, the right to file an objection is not the same as the absolute right to opt out. An objection merely addresses the overall fairness of the settlement and offers no solace to a class member who wants to proceed on her own because she believes her claim is unique. Therefore, the due process concern remains. Plaintiffs have cited no authorities suggesting that the absence of objections would allow the Court to conclude that no opt out rights would be exercised if offered, and thus to certify a non opt out class.

We also do not believe that the due process concerns can be cured by certifying the class under Rule 23(b)(3) and thereby offering opt out rights, as Plaintiffs appear to be suggesting.

9

(Pl. Br. at 13-14.)  An express condition of the mediated settlement, and the agreement to pay substantial sums to bring this litigation to an end, was that there would be no opportunity for class members to opt out.  Thus, while the Court can entertain a motion for class certification under Rule 23(b)(3) if the litigation resumes, it cannot approve the proposed Consent Decree on these grounds because Defendants have not consented to an opt out class settlement.

In short, a plain reading of *Wal-Mart* appears to preclude the Court from certifying a non opt out settlement class under Rule 23(b)(2).

## CONCLUSION

Defendants respectfully request that the Court evaluate the impact of the *Wal-Mart* decision on Plaintiffs' motion for preliminary approval of the proposed Consent Decree and determine whether the Court can certify the proposed class for settlement purposes.

Dated: September 9, 2011

                              PROSKAUER ROSE LLP

                              By: /s/ *Bettina B. Plevan*
                                   Bettina B. Plevan
                                   Eleven Times Square
                                   New York, New York 10036-8299
                                   Telephone: 212.969.3000
                                   Facsimile: 212.969.2900
                                   bplevan@proskauer.com