**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
ADRIANNE CRONAS, et al.,                         :
                                                       :     06 Civ. 15295 (RMB)
                           Plaintiffs,        :
                                                       :     **DECISION & ORDER**
                - against -                       :
                                                       :
WILLIS GROUP HOLDINGS, LTD., et al.,      :
                                                       :
                          Defendants.        :
------------------------------------------------------------x

**I.     Introduction**

On July 3, 2008, Adrianne Cronas ("Cronas") and others (collectively, "Plaintiffs") filed an amended class action complaint against Willis Group Holdings, Ltd. ("Willis"), Willis of New York ("WNY"), and certain other Willis affiliates (collectively, "Defendants") on behalf of themselves and a putative class of Defendants' female employees (the "Class" or "Class Members").[1]  (See Am. Compl, dated July 3, 2008.)  Plaintiffs alleged "a pattern and practice of sex discrimination and retaliation" against "female officers and officer-equivalents" by Defendants in violation of, among other authorities, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  (Am. Compl. ¶¶ 1, 17.)  Cronas also asserted individual claims of discriminatory termination, alleging that she was "demoted and terminated and replaced by a less qualified male employee at a higher salary."  (Am. Compl. ¶ 116.)

On August 25, 2011, Plaintiffs filed a motion for preliminary approval of a consent decree ("Consent Decree") that would settle this case in its entirety and establish an

---

[1]     This case follows Hnot v. Willis Group Holdings, Ltd., No. 01 Civ. 6558 (S.D.N.Y.) (Lynch, J.), which involved the same defendants and a nearly identical class for a different time period.  That class was certified on March 18, 2005, and the case settled on February 22, 2008.  See Hnot v. Willis Group Holdings Ltd., 228 F.R.D. 476, 482–83 (S.D.N.Y. 2005); Hnot v. Willis Group Holdings Ltd., No. 01 Civ. 6558, 2008 WL 1166309, at *1 (S.D.N.Y. Apr. 7, 2008).

$11,595,030.85 settlement fund ("Settlement Fund"). (See Pls.' Mem. of Law in Supp. of Preliminary Approval of Consent Decree, dated Aug. 25, 2011 ("Prelim. App. Mem."), Ex. A.) Plaintiffs stated, among other things, that "[d]uring more than four years of litigation, the parties engaged in and completed thorough discovery, including the formulation of and response to numerous document requests and interrogatories, the review and analysis of over 200,000 emails and documents provided by defendants, the depositions of two Class Representatives and 13 current or former officers of Willis, the retention of highly-trained experts who conducted extensive analyses of alleged gender disparities in pay and promotions, and the depositions of those experts." (Prelim. App. Mem. at 1–2.) On October 18, 2011, the Court entered an order granting preliminary approval of the Consent Decree ("Preliminary Approval Order"). (See Order, dated Oct. 18, 2011.)

The Consent Decree provides, among other things, the following:

- The "Class" shall be defined as "women who were employed by Willis of New York, Inc. in officer-level or officer-equivalent positions during the years January 1, 2002 through December 31, 2007." (Consent Decree at 9.)

- The parties have agreed to settle "[i]n the interest of resolving the dispute among the parties without the expense, delay, and inconvenience of further litigation." (Consent Decree at 3.)

- Willis of New York, Inc. shall institute various forms of injunctive relief, including, among others, a new "performance appraisal system," submission of compensation policies and practices to a "monitor" for review, the posting of all vacancies "so that current employees have the opportunity to apply," and the informing of managers of the "consent decree requirements." (Consent Decree at 18–23.)

- "Willis will pay a total of $11,595,030.85" "[i]n satisfaction of the claims of the Class Members with respect to Class Claims and the claims of Class Representative Cronas with respect to both her Class Claims and her Individual Claims, including attorneys' fees and expenses." (Consent Decree at 14.)

- "Willis will not oppose a petition seeking . . . an award of fees and costs." (Consent Decree at 28.)

2

On October 21, 2011, pursuant to the Preliminary Approval Order, class counsel caused the court-approved class notice to be mailed to the 316 class members. (See Decl. of Stacy Roe, dated Dec. 6, 2011 ("Roe Decl."), ¶ 9.) On October 31, 2011, class counsel filed a motion for attorneys' fees and costs ("Fee Petition"), requesting 21.7% of the Settlement Fund, or $2,510,342.16, in attorneys' fees for the class claims, $388,739.87 in attorneys' fees for Cronas's individual claims, and $301,814.88 in expenses. (See Pls.' Mem. of Law in Supp. of Pls.' Mot. for Approval of Attorneys' Fees and Expenses, dated Oct. 31, 2011 ("Fee Mem."), at 5.) On December 16, 2011, class counsel voluntarily agreed to reduce their request for attorneys' fees on Cronas's individual claims from $388,739.87 to $194,000, and to distribute the $194,739.87 difference to the class. (See Proposed Order, dated Dec. 16, 2011.)

The Preliminary Approval Order, the Consent Decree, the class notice, and the Fee Petition were posted on the website identified in the class notice. (See Pls.' Mem. of Law in Supp. of Final Approval of Consent Decree, dated Dec. 6, 2011 ("Final App. Mem."), at 1.). As of December 5, 2011, no objections to the Consent Decree or the Fee Petition had been received. (Roe Decl. ¶ 13.) On December 6, 2011, Plaintiffs moved for final approval of the Consent Decree. (See Final App. Mem.)

On December 12, 2011, the Court held a fairness hearing pursuant to Rule 23(e) of the Federal Rules of Civil Procedure. (See Hr'g Tr., dated Dec. 12, 2011.) No person present opposed the proposed Consent Decree or the Fee Petition. (See id.) The Court heard from class counsel who spoke in favor of the Consent Decree and the Fee Petition. Defense counsel did not speak in opposition. (See id.)

**For the reasons set forth below, the Consent Decree is approved, and the Fee Petition is granted as modified.**

**II.     Legal Standard**

"A court may approve a class action settlement if it is fair, adequate, and reasonable, and not a product of collusion." Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 117 (2d Cir. 2005) (internal quotation marks omitted). "The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001). "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart, 396 F.3d at 116. There is a "strong judicial policy in favor of settlements, particularly in the class action context." Id.

Courts examine the "fairness, adequacy, and reasonableness" of a class settlement according to the nine factors enumerated in City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Wal-Mart, 396 F.3d at 117.

"Courts may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method." Id. at 121. Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." Goldberger v. Integrated

4

Res., Inc., 209 F.3d 43, 47 (2d Cir. 2000). "[T]he district court may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." Id. Under the percentage method, the court "sets some percentage of the recovery as a fee," and looks to "the same 'less objective' factors that are used to determine the multiplier for the lodestar." Id.

Regardless of the method, "the traditional criteria in determining a reasonable common fund fee" are: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Id. at 50.

### III. Analysis

**(1)     Consent Decree**

The Consent Decree is hereby approved as fair, reasonable, and adequate to the Class.

The Consent Decree was the result of "good faith, arms-length bargaining between experienced counsel."[2] States of N.Y. and Md. v. Nintendo of Am., Inc., 775 F. Supp. 676, 680 (S.D.N.Y. 1991); (see Final App. Mem. at 1.) And, experienced class counsel "engaged in sufficient investigation and discussions about the merits of the action to evaluate fully the merits of the claims and the obstacles to success." In re EVCI Career Colleges Holding Corp. Sec. Litig., No. 05 Civ. 10240, 2007 WL 2230177, at *6 (S.D.N.Y. July 27, 2007); (see Prelim. App. Mem. at 1–2.) The Consent Decree is thus "entitled to a strong initial presumption of fairness." In re Global Crossing Sec. & ERISA Litig., 225 F.R.D. 436, 461 (S.D.N.Y. 2004); see also Wal-Mart, 396 F.3d at 116.

---

[2]     The Hnot litigation also settled after good faith, arms-length bargaining. See supra n.1.

The nine <u>Grinnell</u> factors favor approval of the Consent Decree. The first <u>Grinnell</u> factor—the "complexity, expense and likely duration of the litigation"—supports approval of the Consent Decree because, among other reasons, this case is complex and expensive, and significant additional time, effort, and expense would be incurred to resolve the pre-trial motions, trial, post-trial motions, and likely appeals. 495 F.2d at 463; <u>see</u> <u>In re Vecco Instruments Sec. Litig.</u>, No. 05 MDL 1695, 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y. Nov. 7, 2007).

The second <u>Grinnell</u> factor—"reaction of the class to the settlement"—favors approval of the Consent Decree because no Class Member has objected to the Consent Decree. 495 F.2d at 463; <u>see</u> <u>D'Amato</u>, 236 F.3d at 86–87; <u>In re AOL Time Warner ERISA Litig.</u>, No. 02 Civ. 8853, 2006 WL 2789862, at *6 (S.D.N.Y. Sept. 27, 2006); (Roe Decl. ¶ 13).

The third <u>Grinnell</u> factor—"the stage of the proceedings and the amount of discovery completed"—favors approval of the Consent Decree because the parties "engaged in and completed thorough discovery, including the formulation of and response to numerous document requests and interrogatories, the review and analysis of over 200,000 emails and documents provided by defendants, the depositions of two Class Representatives and 13 current or former officers of Willis, [and] the retention of highly-trained experts." 495 F.2d at 463; (Prelim. App. Mem. at 1–2.) This discovery provided the parties with "sufficient information to make an informed judgment on the reasonableness of the settlement proposal." <u>Diamond v. Fogelman</u>, No. 90 Civ. 900, 1992 WL 167271, at *4 (E.D.N.Y. June 26, 1992).

The fourth through seventh <u>Grinnell</u> factors—"the risks of establishing liability," "the risks of establishing damages," "the risks of maintaining the class action through the trial," and "the ability of the defendants to withstand a greater judgment"—also favor approval of the Consent Decree. 495 F.2d at 463. Plaintiffs recognized that, among other things, the Consent

6

Decree "was reached at a critical stage of the proceedings, when the question of whether this case may proceed as a class action was still unresolved, and at a time when the standards for certifying such a class were in flux," and that there were "risks of proceeding further, including but not limited to those associated with trying the case." (Prelim. App. Mem. at 3, 6); see Gilliam v. Addicts Rehab. Ctr. Fund, No. 05 Civ. 3452, 2008 WL 782596, at *4–5 (S.D.N.Y. Mar. 24, 2008).

The eighth and ninth Grinnell factors—"the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation"—also favor approval of the Consent Decree. 495 F.2d at 463. Plaintiffs state that the Consent Decree provides, among other things, "significant injunctive relief, including: (1) establishing requirements for Willis of New York, Inc.'s performance evaluation system, and increasing the linkage between compensation decisions and performance evaluations; (2) revisions to Willis of New York, Inc.'s compensation practices; and (3) review of all compensation decisions by both human resources and an independent monitor, and a commitment to eliminating inappropriate disparities." (Prelim. App. Mem. at 4; see Consent Decree at 18–23.) Plaintiffs also state that "this is an excellent monetary settlement as it provides more than two thirds of the total economic loss to the class calculated by plaintiffs' expert." (Prelim. App. Mem. at 3.) The Consent Decree "represents a compromise between the strengths of Plaintiffs' case and the possible success of [Defendants'] defenses." Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005).

**(2)** **Class Certification**

The Court provisionally certified the Class in the Preliminary Approval Order. (See Order, dated Oct. 18, 2011.)

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." Denney v. Deutsche Bank AG. 443 F.3d 253, 270 (2d Cir. 2006).  The Class satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation.  See Fed. R. Civ. P. 23(a).  "[N]umerosity is presumed at a level of 40 members," and here there are 316 Class Members.  Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995). Commonality exists because the Class consists of 316 officer-level women all employed at a single location, where pay and promotion decisions were subject to a single ultimate decision-maker, and statistical evidence suggests "statistically significant disparities" between men and women employees with respect to pay and job titles at the single Willis office.  (Pls.' Mem. of Law in Supp. of Mot. for Class Cert., dated Aug. 9, 2010, at 5–6); see Hnot, 228 F.R.D. at 482–83.  Plaintiffs' claims are "typical of those of the class" because Defendants employed all of the Class Members in similar executive positions during the relevant class period.  Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997); see Hnot, 228 F.R.D. at 485.  Plaintiffs' representation of the Class is fair and adequate because they "have an interest in vigorously pursuing the claims of the class, . . . have no interests antagonistic to the interests of other class members," Denney, 443 F.3d at 268, and are represented by counsel who "are qualified, experienced and able to conduct th[is] litigation," In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted).

The Court also finds that Rule 23(b)(2) is satisfied because the Consent Decree affords class-wide injunctive relief, (see Consent Decree at 18–26); Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 614 (1997); Comer v. Cisneros, 37 F.3d 775, 784, 796 (2d Cir. 1994), and because Plaintiffs' backpay claims are "incidental" to the injunctive relief and are calculable "by

formula." (Consent Decree at 15); Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2560 (2011); see DeHoyos v. Allstate Corp., 240 F.R.D. 269, 285 (W.D. Tex. 2007).

### (3) Attorneys' Fees and Costs

Class counsel argues, among other things, that they should receive $2,510,342.16, or 21.7% of the $11,595,030.85 Settlement Fund, for 7,488.6 hours of work on the class claims, $388,739.87 for 907.1 hours of work on Cronas's individual claims, and $301,814.88 in expenses. (See Fee Mem. at 5.) As noted, on December 16, 2011, class counsel voluntarily agreed to reduce their request for attorneys' fees on Cronas's individual claims from $388,739.87 to $194,000 and to distribute the $194,739.87 difference to the Class. (See Proposed Order, dated Dec. 16, 2011.)

Employing the percentage method of fixing class counsel's compensation (while relying upon the lodestar method as a "cross-check"), the Court finds, for the reasons that follow, that the $2,510,342.16, or 21.7% of the Settlement Fund, sought for work on the class claims is a fair and reasonable fee under the six Goldberger factors. 209 F.3d at 47.

The first Goldberger factor—"the time and labor expended by counsel"—supports the requested 21.7% fee award. 209 F.3d at 47. Class counsel "expended substantial time and effort" over the four years of this litigation, devoting 7,488.6 hours of work on the class claims. In re Giant Interactive Group, Inc. Sec. Litig., --- F.Supp.2d ---, 2011 WL 5244707, at *9 (S.D.N.Y. Nov. 2, 2011); (see Fee Mem. at 5.) The work included "review and analysis of over 200,000 emails and documents provided by defendants, the depositions of two Class Representatives and 13 current or former officers of Willis, [and] the retention of highly-trained experts," all of which support the 21.7% fee award. (Prelim. App. Mem. at 1–2.); see Guippone

v. BH S & B Holdings, LLC, No. 09 Civ. 1029, 2011 WL 5148650, *9–10 (S.D.N.Y. Oct. 28, 2011).

As to the second and third Goldberger factors—"the magnitude and complexities of the litigation" and "the risk of [contingency] litigation"—support the 21.7% fee award because of "the difficulty in proving [employment] discrimination on a class-wide basis." Warren v. Xerox Corp., No. 01 Civ. 2909, 2008 WL 4371367, at *7 (E.D.N.Y. Sept. 19, 2008).

The fourth Goldberger factor—"the quality of representation"—supports the 21.7% fee award because class counsel were professional and experienced and achieved a similar result as in Hnot, 2008 WL 1166309, at *1. Goldberger, 209 F.3d at 47; see Ling v. Cantley & Sedacca, LLP, No. 04 Civ.4566, 2006 WL 290477, at *3 (S.D.N.Y. Feb. 8, 2006).

As to the fifth Goldberger factor—"the requested fee in relation to the settlement"—a fee of 21.7%, or $2,510,342.16, of the $11,595,030.85 Settlement Fund, is consistent with fees granted in other employment discrimination class actions. 209 F.3d at 47; see, e.g., Velez v. Novartis Pharm. Corp., No. 04 Civ. 09194, 2010 WL 4877852, at *21 (S.D.N.Y. Nov. 30, 2010) (awarding fees of 22% of fund); Bellifemine v. Sanofi-Aventis U.S. LLC, No. 07 Civ. 2207, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) (awarding fees of 16% of fund); Hnot, 2008 WL 1166309, at *1.

As to the sixth Goldberger factor—"public policy considerations"—a fee award of 21.7% balances the concern for moderation with the public policy enforcing the civil rights laws against discrimination in employment. 209 F.3d at 53.

A lodestar "cross-check" confirms the reasonableness of the 21.7% legal fee award for the class claims. Goldberger, 209 F.3d at 50. Class counsel's stated lodestar for the class claims work is $2,699,787.50, which is higher than 21.7% of the Settlement Fund by $189,445.34. (See

10

Fee Mem. at 5.)  The hourly rates were within prevailing market rates, and the amount of work billed was reasonable and descriptively itemized.  See, e.g., Heisman Trophy Trust v. Smack Apparel Co., 665 F. Supp. 2d 420, 424 (S.D.N.Y. 2009).

For the same reasons above, and in light of class counsel's voluntary agreement to reduce the requested fee for Cronas's individual claims from $388,739.87 to $194,000, the Court finds that $194,000 in attorneys' fees for Cronas's individual claims is reasonable.  See Adorno v. Port Authority of N.Y. and N.J., 685 F. Supp. 2d 507 (S.D.N.Y. 2010).

Class counsel's request for reimbursement of expenses in the amount of $301,814.88 appears reasonable.  See In re Ashanti Goldfields, No. 00 Civ. 717, 2005 WL 3050284, at *5–6 (E.D.N.Y. Nov. 15, 2005).  Plaintiffs submitted a list of expenses, which included items such as "delivery/messenger," "transportation," "filing fees," photocopies," "telephone," and expert fees.  (Decl. of Robert L. Herbst, dated Oct 31, 2011, ¶ 20; see Decl. of Christine E. Webber, dated Oct. 30, 2011, ¶ 15; Decl. of Rosalind S. Fink, dated Oct. 28, 2011, ¶ 22.)  These expenses "are the type for which the paying, arms' length market reimburses attorneys."  In re Global Crossing, 225 F.R.D. at 468; see In re Top Tankers, No. 06 Civ. 13761, 2008 WL 2944620, at *17 (S.D.N.Y. July 31, 2008).  "For this reason, they are properly chargeable to the Settlement [F]und."  In re Global Crossing, 225 F.R.D. at 468.

**IV.  Conclusion and Order**

For the foregoing reasons, Plaintiffs' motion for final approval of the Consent Decree [#151] is granted, and Plaintiffs' motion for attorneys' fees and costs [#144] is granted as modified.  The Court awards 21.7% of the $11,595,030.85 Settlement Fund, or $2,510,342.16, in attorneys' fees for the class claims, $194,000 in attorneys' fees for Cronas's individual claims,

and $301,814.88 in expenses. The $194,739.87 reduction in the attorney's fee for Cronas's individual claims shall be added to the class recovery under the Consent Decree.

The parties are directed to participate in a status conference regarding the progress of the distribution to the Class on March 15, 2012 at 9:00 a.m. **Attorneys' fees and expenses are not to be distributed to class counsel until at least 80% of the Settlement Fund has been distributed to the Class.**

Dated: New York, New York
December 19, 2011

*RMB*

**RICHARD M. BERMAN, U.S.D.J.**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/19/11
```